NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOSEPH M. PALLIPURATH, | |
| Plaintiff, | Civil Action No. 21-4567 (ZNQ) (TJB) |
| v. | OPINION |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

QURAISHI, District Judge

Plaintiff Joseph M. Pallipurath, a convicted and sentenced prisoner currently incarcerated at New Jersey State Prison ("NJSP") in Trenton, New Jersey, is proceeding *pro se* with a civil rights complaint alleging claims under 42 U.S.C. § 1983 and other federal and state law.  (*See* Compl., ECF No. 1.)  The Court has screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a), and 42 U.S.C. § 1997e(c) to determine whether the Court should dismiss it as frivolous or malicious, for failure to state a claim upon which the Court may grant relief, or because it seeks monetary relief from a defendant who is immune from suit.  For the reasons below, the Court will dismiss all of Plaintiff's federal claims and decline to exercise supplemental jurisdiction over Plaintiff's state claims.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The Complaint arises from injuries that Plaintiff allegedly sustained while riding in the back of the New Jersey Department of Corrections' ("NJDOC") new transport vans.  (*See*

*generally* Compl.)  Plaintiff alleges that, at some point prior to November 2014, the NJDOC acquired new vans to transport inmates.  (*See id.* ¶¶ 80, 94.)  In the new vans, inmates sit sideways facing inward with their backs against the sidewall of the vehicles.  (*Id.* ¶ 81.)  According to Plaintiff, the upper half of the sidewall is angled inward, which forces inmates to sit leaning forward with their heads hanging down.  (*Id.* ¶¶ 81–82.)  The vans also lack shoulder seatbelts and safety padding to protect the inmates from head, back, and neck injuries.  (*Id.* ¶¶ 83, 87–88.)  Moreover, although the vans have lap belts, they are installed in such a manner that inmates cannot latch them their selves, and officers often reject inmates' requests to assist them.  (*Id.* ¶ 89–90.)  As a result, when the vans are driven erratically, inmates hit their head and upper body against the unpadded angled wall.  (*See id.* ¶¶ 83–90.)  Plaintiff further complains that the vans are unsanitary and lack proper lighting and ventilation.  (*See id.* ¶¶ 89, 92–93.)

Plaintiff asserts that officials transported him in the new NJDOC vans on several occasions between November 2014 and September 18, 2018.  (*See id.* ¶¶ 94–151.)  During those rides, transport officers would drive erratically and recklessly, causing Plaintiff to be thrown about and violently jolted.  (*See id.*)  Plaintiff often pleaded with the officers to "take it easy," but the officers continued to subject him to "rough ride assaults," which caused him severe pain in his neck and back.  (*See id.*)

After each ride, Plaintiff told medical staff at NJSP about his experiences in the new NJDOC vans and the pain in his neck and back.  (*See* ¶ 97.)  At first, medical staff did not conduct any examination of Plaintiff or prescribe him any treatment for his pain.  (*See id.* ¶¶ 98, 107, 111–113.)

However, after Plaintiff persisted with his complaints of neck and back pain following rides in the new NJDOC vans, Plaintiff was examined and diagnosed on March 3, 2018, with early-

stage arthritis. (*Id.* ¶¶ 115–117.) Plaintiff was advised to practice gentle and gradual stretching, and prescribed Naproxin. (*See id.*)

Nonetheless, Plaintiff disagreed with the assessment and remained convinced that his continued nerve and back pain was caused by the new NJDOC vans, not arthritis. (*See id.* ¶¶ 122, 135–136.) Plaintiff continued to tell medical officials about his pain after riding in the vans, but after numerous x-rays showed no injuries, medical officials continued to insist the pain was caused by his arthritis. (*See id.* ¶ 135–136, 153–154.)

Finally, after Plaintiff's continued complaints, medical officials performed an MRI on Plaintiff's neck on August 16, 2019. (*Id.* ¶ 201.) The MRI revealed that Plaintiff "[has] a defect at the C5-C6 level," specifically, "a posterior disc osteophyte complex . . . resulting in mild left neural foraminal narrowing," (*see id.* ¶ 201), which Plaintiff alleges was caused by his rides in the new NJDOC vans, (*see id.* at 57 n.7.) A doctor recommended that Plaintiff receive a cervical epidural steroid injection, and he was told in November 2019 that he would soon receive the injection. (*Id.* ¶ 201.)

However, Plaintiff did not receive the injection anytime soon. On January 13, 2020, Plaintiff filed an inquiry and/or grievance with the medical department inquiring as to the status of his prescribed treatments for his neck and back pain. (*Id.* ¶ 206.) On January 20, 2020, a nurse responded to Plaintiff's inquiry, informing him that he "[has] been approved for injections and [is] pending a date." (*Id.* ¶ 207.)

As Plaintiff continued to wait for his steroid injection, he contracted COVID-19 in early April 2020. (*Id.* ¶ 208.) Plaintiff alleges that he did not receive treatment for COVID-19 for over two weeks. (*Id.* ¶¶ 209–214.) On May 19, 2020, Plaintiff received a COVID-19 test. (*Id.* ¶ 215.)

On May 23, 2020, Plaintiff was notified that he tested positive for COVID-19, and officials quarantined him from that date until June 1, 2020.  (*Id.* ¶ 219.)

Plaintiff claims that the quarantine cell "was unsanitary with visible dust, rat feces on the floor, human bodily waste/fluid throughout the cell wall and on the toilet sink" and an unidentified officer merely "offered Plaintiff a broom and mop to clean the cell without any disinfectant." (*Id.* ¶ 218.)  Plaintiff also alleges that he was not provided medical attention while quarantined other than "the nurses came to administer [his] regular medication, twice a day to take temperature and/or to administer [a] COVID-19 test." (*Id.* ¶ 219.)

Plaintiff was ultimately transferred to the hospital for his steroid injection on October 13, 2020.  (*Id.* ¶ 239.)  On this trip, which he contends was "five to fifteen minutes to the hospital from the [NJSP]," the transport officer assisted him with his seatbelt, and he "was not bounced around when the van was in motion" unlike his earlier trips.  (*Id.* ¶ 240.)  Nonetheless, he complains that he still had to sit in an abnormal position during the ride because of the design of the new NJDOC vans.  (*Id.*)

Plaintiff initiated this matter on or around March 9, 2021, by filing the Complaint with the Court.  (*See* Compl.)  On May 4, 2021, the Court granted Plaintiff's application to proceed *in forma pauperis* but ordered that summons not issue at that time pending the Court's screening of the Complaint.  (*See* May 4, 2021 Order, ECF No. 9.)

## II.    <u>LEGAL STANDARD</u>

District courts must review complaints in civil actions in which a prisoner or pretrial detainee, is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(a), or brings an action with respect to prison conditions, s*ee* 42 U.S.C. § 1997e(c).  District courts may *sua sponte* dismiss any claim that

is frivolous, is malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1).

The legal standard for dismissing a complaint for failure to state a claim pursuant to Sections 1915(e)(2)(B), 1915A(a), or 1997e(c) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010).  A court properly grants a motion to dismiss pursuant to Rule 12(b)(6) if, "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quotations and citations omitted).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

III.   **DISCUSSION**

The Court liberally construes the Complaint as asserting the following claims pursuant to

Section 1983:[1]

> (1) Eighth Amendment excessive force claims against various "John/Jane Doe" transport officers for their alleged reckless driving and "rough ride assaults";
>
> (2) Eighth Amendment conditions of confinement claims against various "John/Jane Doe" transport and correctional officers relating to the conditions of the new NJDOC vans and Plaintiff's quarantine cell;
>
> (3) Eighth Amendment medical care claims against various medical officials for Plaintiff's alleged neck and back pain and COVID-19 symptoms;
>
> (4) First Amendment retaliation claims against various medical officials for alleged illegal copays;
>
> (5) supervisor liability claims against defendants in supervisory or policymaking positions for implementing policies or practices related to reckless driving, conditions of the NJDOC vans, Plaintiff's quarantine cell, and his medical care;
>
> (6) Fourteenth Amendment equal protection claims against various officials; and
>
> (7) Fourteenth Amendment substantive due process claims against various officials.

(*See generally* Compl.)  The Complaint also asserts additional claims pursuant to the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, the Rehabilitation Act ("RA"), 29

U.S.C. §§ 701-796, and state law.  (*See id.*)  The Court addresses these claims in turn below.

---

[1]  The Court notes that the Complaint is voluminous and purportedly states twenty-two separate counts against more than 70 defendants comprising of various state officials, state agencies, corporations, and their employees.  However, the basis for each claim is not clearly alleged, and it appears that some of the claims overlap.  Accordingly, the Court construes less than twenty-two separate counts.

## A.      Persons Amenable to Suit

As an initial matter, Plaintiff names the NJDOC and numerous state officials acting in their official capacities as defendants in this matter.   As explained below, the Court will dismiss Plaintiff's Section 1983 claims against these defendants because they are not "persons" subject to liability within the meaning of the statute.

Section 1983 imposes liability on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws."  42 U.S.C. § 1983 (emphasis added).  To be liable under Section 1983, therefore, a defendant must be a "person" within the meaning of the statute.  *See id.*  The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, a cause of action under Section 1983 "cannot be asserted against the state, its agencies, or its officials acting in their official capacities."  *Landi v. Borough of Seaside Park*, No. 07-5319, 2009 WL 606141, at *6 (D.N.J. Mar. 9, 2009).

Here, the Complaint asserts Section 1983 claims against the NJDOC, a state agency, and state officials acting in their official capacities.  As these defendants are not "persons" within the meaning of Section 1983, the Court will dismiss these claims with prejudice for failure to state a claim for relief.  *See Will*, 491 U.S. at 71.

## B.      Excessive Force Claims for Reckless Driving

The Court next addresses Plaintiff's Eighth Amendment excessive force claims regarding the alleged reckless driving or "rough ride assaults" by "John/Jane Doe" transport officers.  As the Court explains below, the relevant statute of limitations bars these claims.

Section 1983 does not contain a statute of limitations period. "It is well-established that, if Congress has created a cause of action and not specified the period of time within which a claim must be asserted, a court may infer that Congress intended state limitations periods to apply and may borrow such periods and engraft them onto the federal statute." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471–72 (3d Cir. 2001). As such, the analogous state statutes of limitations are "binding rules of law" for actions brought under 42 U.S.C. § 1983. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 483–84 (1980). The Third Circuit has repeatedly found that a state's statute of limitations for personal injury actions applies to all actions brought under Section 1983. *See, e.g.*, *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 276 (3d Cir. 2004). Accordingly, New Jersey's two-year statute of limitations for personal injury actions governs Plaintiff's claims under Section 1983. *See id.*; N.J. Stat. § 2A:14-2.

Although courts apply state limitations periods in Section 1983 cases, accrual of a cause of action under the statute is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a cause of action generally accrues, and the statute of limitations commences to run, "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Id.* This typically occurs at the time the plaintiff suffers an injury. *See id.* at 391.

Here, the "rough ride assaults" allegedly occurred between November 2014 and September 18, 2018. (Compl. ¶¶ 94–151.)[2] As Plaintiff suffered injury on or before September 18, 2018,

---

[2] Although Plaintiff also alleges that an unidentified transport official transported him in a NJDOC van on October 13, 2020, he does not allege that official drove recklessly on that trip. Rather, he alleges the transport officer assisted him with his seatbelt and that he "was not bounced around when the van was in motion" unlike his earlier trips. (*See* Compl. ¶ 240.) Accordingly, the Court does not construe the Complaint as asserting an excessive force claim regarding the October 13, 2020 trip.

Plaintiff had a complete and present cause of action at that time, and the statute of limitations began to run.  *See Wallace*, 549 U.S. at 388.  Accordingly, as Plaintiff filed the Complaint over two-years later on or around March 9, 2021, the statute of limitations bars his excessive force claims unless equitable considerations apply.

That does not end the matter, however, because Plaintiff claims that "[i]t was on April 18, 2019, [that he], for the first time, had realized . . . based on the xray's result . . . that his nerve pain[s] are a result [of] the injuries he had repeatedly sustained during the NJDOC van transportations . . . ."  (Compl. ¶ 189 n.6.)  Under the discovery rule, "in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actional claim."  *Lopez v. Swyer*, 300 A.2d 563, 565 (N.J. 1973).[3]  Once a party knows it has been injured and that said injury is the fault of another, it has the requisite knowledge for the applicable period of limitations to commence running.  *See Russo Farms, Inc. v. Vineland Bd. of Educ.*, 675 A.2d 1077, 1092 (N.J. 1996).  "[I]t is not necessary that the injured party have knowledge of the extent of injury before the statute begins to run," *id.*, or that "the injured party's knowledge be impeccable or that the exact cause of the injury be known," *Evesham Twp. Bd. of Educ. v. Vitetta Grp.*, No. A-4196-06T2, 2008 WL 4735883, at *15 (N.J. Super. Ct. App. Div. Oct. 30, 2008).

---

Moreover, to the extent that Plaintiff contends that the reckless driving or "rough ride assaults" continued beyond September 18, 2018, he fails to support those allegations with sufficient facts to make those claims plausible.  *See Iqbal*, 556 U.S. at 678.

[3]  Generally, state tolling principles govern Section 1983 claims so long as they do not contradict federal law or policy.  *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009).  As New Jersey's discovery rule does not contradict federal law or policy, the Court applies New Jersey's discovery rule to this case.  *See Rolax v. Whitman*, 175 F. Supp. 2d 720, 727 (D.N.J.) ("Federal and New Jersey state law relating to the accrual of causes of action and the effect of the 'discovery rule' are essentially the same."), *aff'd*, 53 F. App'x 365 (3d Cir. 2002).

Here, although Plaintiff claims that he did not know that his nerve pain was the result of injuries he had sustained during the NJDOC van rides until April 18, 2019, that assertion is belied by his other allegations in the Complaint.  For example, Plaintiff insisted to medical staff throughout 2018 that the van rides caused his nerve pain.  (*See* Compl. ¶¶ 151–54.)  Moreover, Plaintiff's post-conviction relief attorney John V. Saykanic apparently wrote a letter to prison officials dated December 5, 2018, requesting that prison administration "provide proper medical treatments for the painful injuries plaintiff suffered during transportations in the NJDOC vans." (*Id.* ¶ 173.)  Accordingly, by his own admissions, it is apparent that he knew he had sustained injury at the fault of another no later than December 5, 2018, and, therefore, even if this Court were to apply the discovery rule, it would not save Plaintiff's claim.  *See Lopez*, 300 A.2d at 565. This is so notwithstanding that he might not have known at that time the full extent of his injury or its exact cause.  *See Russo Farms, Inc.*, 675 A.2d at 1092; *Evesham Twp. Bd. of Educ.*, 2008 WL 4735883, at *15.

As the Court discerns no other equitable reason to toll the statute of limitations period, the statute of limitations bars Plaintiff's excessive force claims against the "John/Jane Doe" transport officers.  Accordingly, the Court will dismiss these claims without prejudice for failure to state a claim.[4]

## C.    Conditions of Confinement Claims

The Court turns to Plaintiff's Eighth Amendment claims against various transport and correctional officers asserting that the conditions of the new NJDOC vans and his quarantine cell

---

[4]  For the same reasons, the statute of limitations also bars Plaintiff's supervisor liability claims against supervisory or policymaking defendants for their alleged roles in the reckless driving and "rough ride assaults," and the Court will dismiss them without prejudice.  Regardless, these supervisory claims also fail for the reasons stated in Section III.F, *infra*.

were constitutionally inadequate.[5]  Specifically, Plaintiff alleges that the new NJDOC vans lacked lighting, windows, and ventilation.  (*See* Compl. ¶¶ 89, 92–93, 306.)  Plaintiff also alleges that the new vans were unsanitary, and that Plaintiff traveled for several hours in them without meals.  (*See id.*)  Plaintiff further contends that the new NJDOC vans' angled upper sidewall, lack of shoulder seatbelts, or lack of seat or head cushions created constitutionally inadequate conditions.  (*See id.* ¶¶ 80–91.)  Finally, Plaintiff contends that the cell in which officials quarantined him when he tested positive for COVID-19 was unsanitary.  (*See id.* ¶ 218.)  For the reasons below, the Court dismisses these claims without prejudice.

The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and decency."  *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000) (citations omitted).   To prevail against prison officials on a claim that an inmate's conditions of confinement violated the Eighth Amendment, the inmate must meet two requirements: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" and (2) the "prison official must have a sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted).  The first element is satisfied when an inmate is deprived of "the minimal civilized measure of life's necessities."  *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).  The second element is satisfied when an inmate shows that prison officials acted with deliberate indifference to the inmate's health or safety or conditions of confinement that violated the inmate's constitutional rights.  *Id.* at 302-03.

---

[5]  The Court considers Plaintiff's related supervisor liability claims regarding the conditions of his confinement in Section III.F, *infra*.

When considering the first element, courts recognize that "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347.

With respect to the second element, deliberate indifference is a "subjective standard of liability consistent with reckless as that term is defined in *criminal* law." *See Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000) (emphasis added). To be liable, the prison official must know of and disregard an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer*, 511 U.S. at 836–37. Nonetheless, a defendant's knowledge of a substantial risk of serious harm "can be proved indirectly by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Plaintiff's allegations that the new NJDOC vans lacked lighting or windows, that the passenger compartments were unsanitary with the smell of human waste and inadequate ventilation, and that Plaintiff traveled for several hours without meals, fail to amount to objectively serious deprivations within the meaning of the Eighth Amendment. None of these allegations, for the relatively short trips that Plaintiff alleged, deprived Plaintiff of "the minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 299.

As to Plaintiff's allegations against transport officials that the new NJDOC vans' lack of safety features and design defects constituted inadequate conditions, the statute of limitations bars Plaintiff's claims relating to the van rides between November 2014 and September 18, 2018, for

the reasons discussed above. *See supra* Section III.B.[6]  With respect to Plaintiff's claim regarding

the conditions of the October 13, 2020 van ride, Plaintiff fails to plead sufficient facts for the Court

to reasonably infer that the transport officer, who assisted Plaintiff with his seatbelt and drove such

---

[6]  In addition to the discussion in Section III.B, *supra*, to the extent Plaintiff could argue that the Court should construe the allegations regarding the November 2014 through September 2018 van rides together with the October 13, 2020 van ride as a single continuing violation, the Court determines that the van rides did not occur with adequate frequency over the relevant period and are not of the same subject matter such that the continuing violations doctrine would apply.

The continuing violations doctrine "is an 'equitable exception to the timely filing requirement.'" *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014).  The doctrine applies "when a defendant's conduct is part of a continuing practice" and "more than the occurrence of isolated or sporadic acts." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). "In such cases, 'so long as the last act [in] the continuing practice falls within the limitations period . . . the court will grant relief for the earlier related acts that would otherwise be time barred.'" *Randall v. City of Phila. L. Dep't*, 919 F.3d 196, 198 (3d Cir. 2019).  Although the doctrine is most frequently applied to employment discrimination cases, courts in the Third Circuit have also applied the doctrine to Section 1983 claims brought by prisoners. *See, e.g., Davis v. N.J. Dep't of Corr.*, No. 10-6439, 2011 WL 5526081 (D.N.J. Nov. 14, 2011).  To establish whether the doctrine applies, courts consider "(1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently." *Cibula v. Fox*, 570 F. App'x 129, 135–36 (3d Cir. 2014).

Here, the Court finds that the alleged illegal van rides did not occur with sufficient frequency over the relevant period to constitute a single, continuing violation.  Although Plaintiff alleges approximately eleven occasions between November 2014 and September 2018 in which he was transported in the new NJDOC vans, (*see* Compl. ¶¶ 94–96, 101–103, 105–106, 108–110, 123, 124–129, 139, 140, 142, 149–150, 151), there is a more than two-year gap until his next alleged ride on October 13, 2020.  In light of the significant gap, the Court determines that the October 13, 2020 trip constituted a mere isolated act rather than a part of a continuing violation.

Moreover, the Court doubts whether the October 13, 2020 van ride is sufficiently similar to the prior rides to constitute the same subject matter for purposes of the continuing violation doctrine. Critically, the rides between November 2014 and September 2018 all involved allegations of reckless driving in addition to the alleged design defects whereas Plaintiff alleges that the transport officer assisted him with his seatbelt and did not drive recklessly on the October 13, 2020 trip. (*See* Compl. ¶ 240.)

 Accordingly, even if Plaintiff asserted the continuing violations doctrine, it would not save his conditions of confinement claims regarding the NJDOC vans' alleged lack of safety features and design defects for the rides that took place in and before September 2018.

that "Plaintiff was not bounced around," (*see* Compl. ¶¶ 239–40), knew of a substantial risk of serious harm to Plaintiff and disregarded that risk. *See Farmer*, 511 U.S. at 836–37.

Finally, as to Plaintiff's claims that the conditions of his quarantine cell amounted to constitutionally inadequate conditions, Plaintiff fails to plead sufficient facts for the Court to reasonably infer that any defendant subjectively appreciated a substantial risk of serious harm to Plaintiff's health attributable to his cell's condition. *See Farmer*, 511 U.S. at 836–37. For instance, although Plaintiff alleges that he reported that "the cell is uninhabitable" to an unidentified officer, and the officer apparently conceded that all the cells are generally "in unsanitary conditions," (*see* Compl. ¶ 218), Plaintiff does not allege or plead sufficient facts for the Court to reasonably infer that the officer knew of any specific condition in Plaintiff's cell that posed a substantial risk of serious harm to Plaintiff's health. Accordingly, the Court will dismiss without prejudice Plaintiff's conditions of confinement claims for failure to state a claim.

### D.     Medical Care Claims

The Court next considers Plaintiff's claims regarding his medical care.[7] The Court construes four distinct medical care claims in the Complaint. First, Plaintiff claims that officials initially denied him any medical treatment for his neck and back pain between November 2014 and March 2018. (*See* Compl. ¶¶ 97–98, 103, 107.) Second, Plaintiff claims that officials provided him inadequate treatment for his neck and back pain between March 3, 2018 and October 2020. (*See* Compl. ¶¶ 115–122, 129–137, 143–148, 152–194, 197–205, 208–232.) Third, Plaintiff claims that officials provided inadequate treatment for his bout with COVID-19 between April 3, 2020 and June 1, 2020. (*See* Compl. ¶¶ 208–232.) Fourth, Plaintiff claims that officials delayed

---

[7] The Court considers Plaintiff's related supervisor liability claims regarding his medical care in Section III.F, *infra*.

administering him an epidural steroid injection for his C5-C6 level defect until October 13, 2020, after a doctor had recommended it in October 2019.  (*See* Compl. ¶¶ 203–207, 239–241.)

The Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976).  To state a claim of inadequate medical care in violation of the Eighth Amendment, an inmate must allege facts showing: (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 106.

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  A court may also determine the seriousness of the inmate's medical need by reference to the effect of denying a particular treatment. *Id.*  A condition is serious if denial of a particular treatment would cause death, degeneration, or extreme pain. *See id.*

To show deliberate indifference, a plaintiff must allege and plead enough factual matter to allow the court to reasonably infer that the official was subjectively aware of a substantial risk of serious harm and that the official disregarded that risk. *See id.*; *Iqbal*, 556 U.S. at 678.  Courts in the Third Circuit have found deliberate indifference in a variety of situations involving claims of inadequate medical care, including where: (1) prison authorities deny reasonable requests for medical treatment; (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it; (3) necessary medical treatment is delayed for non-medical reasons; and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017).  Regardless of the context, however, the defendant must have, and the plaintiff must adequately allege, the

sufficiently culpable state of mind noted above. *See Farmer*, 511 U.S. at 838 ("[O]ur cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.").

Moreover, "mere disagreement as to the proper medical treatment" is insufficient to support an Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346. In cases where the complaint alleges inadequate medical treatment as opposed to a complete denial or delay of medical care, courts "presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). Accordingly, in such cases, "the plaintiff must allege that the treatment violated professional standards of care, in addition to alleging that the defendant acted with the requisite state of mind [deliberate indifference] when providing that inadequate care." *McGinnis v. Hammer*, 751 F. App'x 287, 290 (3d Cir. 2018) (citing *Pearson*, 850 F.3d at 535); *see Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (affirming district court's dismissal of Eighth Amendment inadequate medical care claims brought by *pro se* inmate because the inmate failed to allege the course of treatment in question fell below any professional standard of care); *Young v. Halligan*, 789 F. App'x 928, 930–31 (3d Cir. 2019) (same).

With regard to Plaintiff's claims that officials initially denied him any medical treatment for his neck and back pain between November 2014 and March 2018, the statute of limitations bars these claims for the same reasons discussed above. *See* Section III.B, *supra*. Moreover, even if the statute of limitations did not bar these claims, Plaintiff fails to plead sufficient facts for the Court to reasonably infer that the officials in question knew of and disregarded a substantial risk of serious harm to Plaintiff at that time. *See Farmer*, 511 U.S. at 836–37.

16

Turning to Plaintiff's claims regarding the adequacy of the treatment he received for his neck and back pain between March 2018 and October 2020, as pled, Plaintiff was examined and received treatment on many occasions during this period for his neck and back pain.  For example, the Complaint alleges that Plaintiff was seen by medical officials, including a neurosurgeon, regarding his nerve and back pain more than twenty times during that period, and officials prescribed him Naproxen, Roboxin, vitamin-d pills, and physical therapy, among other things. (*See* Compl. ¶¶ 115–205.)  Accordingly, this claim is best analyzed as a challenge to the adequacy of Plaintiff's care as opposed to a complete denial or delay of care.  *See Pearson*, 850 F.3d at 535. However, Plaintiff does not allege or plead facts sufficient for the Court to reasonably infer that the medical officials' conduct violated professional standards of care.  Accordingly, these claims fail.  *See McGinnis*, 751 F. App'x at 290.

With respect to Plaintiff's claims that officials provided him inadequate treatment for COVID-19, Plaintiff fails to allege or plead facts sufficient for the Court to infer that officials subjectively appreciated of a substantial risk of serious harm to his health or that officials disregarded that risk.  *See Farmer*, 511 U.S. at 836–37.  Although COVID-19 certainly entails risk of serious harm, without further factual details, the Court cannot reasonably infer that officials knew that it posed a *substantial* risk to Plaintiff.  For example, Plaintiff does not allege or plead facts suggesting that COVID-19 poses a substantial risk of serious harm to healthy, non-elderly adults or that officials knew that he had other health problems that would put him at substantial risk of serious harm from COVID-19.  (*See* Compl. ¶¶ 208–232.)  Moreover, Plaintiff does not allege or plead facts sufficient for the Court to reasonably infer that officials disregarded the risk. For example, Plaintiff fails to allege or plead facts suggesting that a treatment was available for COVID-19 during the Spring of 2020.  (*See id.*)

Finally, as to Plaintiff's claim that officials delayed his epidural steroid injection, Plaintiff fails to allege any particular defendants' personal involvement.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . .")  For example, it is not clear which defendants Plaintiff contends delayed his injection and how they were involved.

Accordingly, the Court will dismiss Plaintiff's medical care claims without prejudice for failure to state a claim.

### E.    Retaliation Claims

Plaintiff also asserts First Amendment retaliation claims against certain medical officials.[8] From what the Court gleans, Plaintiff claims that these medical officials retaliated against him for filing grievances about the NJDOC vans and his medical care by charging him unwarranted co-pays.  For example, Plaintiff was initially charged a five-dollar copay for a March 2, 2018 consultation he had regarding his neck and back pain.  (Compl. ¶ 245.)[9]  Plaintiff claims that he was improperly charged copays for follow-up consultations regarding his neck and back pain that occurred on March 28, April 9, and July 25 of 2018; March 21, August 5, and September 25 of 2019; and June 3 of 2020.  (*See* Compl. ¶¶ 250–288.)

A claim of First Amendment retaliation requires that a plaintiff establish: (1) constitutionally protected conduct; (2) an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal connection between the exercise of constitutional rights and the adverse action.  *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

---

[8] The Court considers Plaintiff's related supervisor liability claims regarding his allegations of retaliation in Section III.F, *infra*.

[9] It appears that Plaintiff does not dispute this initial charge.  (*See id.*)

It is well-established that the First Amendment protects the act of filing grievances.  *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

Here, Plaintiff's filing of grievances regarding the NJDOC vans and his medical care is constitutionally protected conduct.  *See id.*  However, the Court determines that charging five- and ten-dollar copays for a few subsequent medical visits over the course of several years, without more, is insufficient to deter a person of ordinary firmness in Plaintiff's position from seeking medical care or filing more grievances.  *See Mitchell*, 318 F.3d at 530.  In fact, the alleged acts did not deter Plaintiff from continuing to seek medical treatment or from filing further grievances. Accordingly, the Court will dismiss Plaintiff's retaliation claims without prejudice for failure to state a claim.

### F.      Supervisor Liability Claims

Plaintiff also asserts claims against various defendants in supervisory or policymaking roles regarding the NJDOC van conditions, Plaintiff's medical care, and the alleged retaliation. Plaintiff claims that "through policy, practice, or custom," their failure to "adequately supervise, discipline, and train" their subordinates, or by "implicitly authoriz[ing], approv[ing], or knowingly acquiesc[ing] to their subordinates' conduct, these supervisory defendants violated Plaintiff's constitutional rights.  (*See* Compl. ¶ 308.)

As noted above, Section 1983 liability requires a "showing of direct responsibility" by the named defendant and eschews any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights . . . ."  *Rizzo v. Goode*, 423 U.S. 362, 376–77 (1976).  In other words, to establish Section 1983 liability, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 676.

Notwithstanding these principles, a plaintiff may establish a supervisor or policymaker's liability under § 1983 by showing: (1) an establishment of policies, practices, or customs that directly caused the constitutional violation; or (2) the supervisor's participation in the violation of the plaintiff's rights, direction of others to violate the plaintiff's rights, knowledge of and acquiescing to a subordinate's conduct. *Doe v. N.J. Dep't of Corr.*, No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

To establish a supervisor or policymaker's liability based on the failure to employ a policy or practice, a plaintiff must identify a specific policy or practice that the supervisor failed to employ and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy in effect created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement a specific practice or procedure. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). "[P]erhaps the easiest way [ ] a plaintiff can make out a supervisor liability claim is by showing that 'the supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries.'" *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001).

"'Failure to' claims – failure to train, failure to discipline, or . . . failure to supervise – are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). Courts assess such claims under the same standard as policy-based claims. *Christopher v. Nestlerode*, 240 F. App'x 481, 489 n.6 (3d Cir. 2007). Thus, to establish liability

20

for failure to train, discipline, or supervise, a plaintiff must show that policymakers were on actual or constructive notice that flaws in their training, disciplining, or supervision caused subordinate officials to violate citizens' constitutional rights, which generally requires knowledge of a prior pattern of similar incidents and circumstances. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998)).

Here, Plaintiff fails to allege with sufficient particularity that any supervisory defendant directly participated in violating his rights, directed others to do so, or knew that their subordinates violated Plaintiff's rights and acquiesced to it. *See Doe*, 2015 WL 3448233, at *9. Likewise, Plaintiff fails to plead sufficient facts for the Court to reasonably infer that any supervisory defendant was on actual or constructive notice that flaws in their training, disciplining, or supervision caused subordinate officials to violate Plaintiff's constitutional rights or that any supervisory defendant failed to respond reasonably to such notice. *See Sample*, 885 F.2d at 1118; *Connick*, 563 U.S. at 61.[10] Finally, to the extent Plaintiff attempts to assert a policy-based claim, Plaintiff fails to identify a specific policy or practice that a supervisor failed to employ. *See Sample*, 885 F.2d at 1118. Accordingly, the Court will dismiss Plaintiff's supervisor liability

---

[10] For example, with respect to Plaintiff's supervisory claims regarding the conditions of the NJDOC vans, Plaintiff alleges that Defendant Marcus Hicks and other senior NJDOC officials met on November 29, 2018, to discuss the NJDOC vans' safety issues. (Compl. ¶ 296.) In addition, Plaintiff also alleges that, on December 20, 2018, an attorney from the People's Organization for Progress wrote Defendant Hicks a letter detailing prisoners' experiences in the NJDOC vans. (Compl. ¶ 297.) However, the meeting and the letter occurred after all but the October 13, 2020 van ride, and, on that trip, the transport officer assisted Plaintiff with his seat belt and Plaintiff was not bounced around. (*See* Compl. ¶ 240.) Accordingly, Plaintiff fails to plead sufficient facts for the Court to reasonably infer that Defendant Hicks had actual or constructive notice of any constitutional issue prior to November 29, 2018, that Defendant Hicks failed to respond reasonably to what he allegedly learned during the meeting or in the letter, and that any failure to train, supervise, or discipline attributable to Defendant Hicks caused Plaintiff's injuries.

claims without prejudice for failure to state a claim.

### G.   Equal Protection Claims

Plaintiff further alleges that certain correctional officers and medical officials "intentionally discriminated against [him] because of his race . . . ." (*See* Compl. ¶ 319.)  The Court construes this as asserting equal protection claims under the Fourteenth Amendment.

To state a claim under the Equal Protection Clause, a prisoner must allege that he was treated differently from those similarly situated and that this different treatment was the result of intentional discrimination based on his membership in a protected group.  *See Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992)

Plaintiff's equal protection claims fail to allege or plead sufficient facts for the Court to infer that Plaintiff was treated differently than those similarly situated or that the different treatment was the result of intentional discrimination based on his race.  *See id.*  Accordingly, the Court will dismiss these claims without prejudice.

### H.   Due Process Claims

The Court next turns to Plaintiff's Fourteenth Amendment due process claims.  Plaintiff argues that certain defendants violated Plaintiff's due process rights by failing to ensure that Plaintiff received proper medical care for his neck and back and for failing to take any action to correct the safety inadequacies of the new NJDOC vans.  (*See* Compl. ¶ 320.)  The Court construes these claims as asserting substantive, as opposed to procedural, due process claims.  As explained below, however, the more-specific provision rule bars these claims.

Under the more-specific-provision rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Betts v. New Castle Youth Dev. Ctr.*, 621 Fl3d

22

249, 254 (3d Cir. 2010).  As discussed above, Plaintiff's conditions of confinement and inadequate medical care claims are covered by the Eighth Amendment.  Accordingly, the more-specific-provision rule bars Plaintiffs' substantive due process claims because they are covered by more specific constitutional provisions.  Therefore, the Court will dismiss these claims without prejudice for failure to state a claim.

I.      **ADA and RA Claims**

Plaintiff also asserts violations of the ADA and RA.  Specifically, Plaintiff claims that officials failed to accommodate his "handicap of painful neck injury by not providing adequate and safe transportation."  (*See* Compl. ¶¶ 317–318.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The Supreme Court has held that Title II of the ADA applies to state prisons.  *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1996).

The RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).  "In light of the similarities between . . . the ADA and RA and their implementing regulations, we construe and apply them in a consistent manner." *Disabled in Action of Pa. v. Se. Pa. Trans. Auth.*, 635 F.3d 87, 91 n.5 (3d Cir. 2011).

To state a claim under either the ADA or RA, an inmate must allege (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits or discrimination was

23

by reason of the plaintiff's disability.  *Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012).

A qualified individual with a disability is one "who, with or without reasonable modification to

rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services

or the participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).

The ADA defines the term "disability" as: (A) a physical or mental impairment that substantially

limits one or more of the major life activities of such individual; (B) a record of such an

impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  The

implementing regulation defines "major life activities" to include "functions such as caring for

oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and

working." 28 C.F.R. § 35.104(2).

        The Complaint fails to state a claim under the ADA or RA.  The Complaint does not allege

that Plaintiff is a qualified individual with a disability or that he was subject to discrimination or

excluded from a service or activity by reason of his disability.  *See Brown*, 492 F. App'x at 215.

Accordingly, the Court will dismiss Plaintiff's ADA and RA claim without prejudice.

        **J.      Remaining State Law Claims**

        The Court further construes the Complaint as asserting various state law claims.  However,

as this Court has determined that it will dismiss all claims for which it has original jurisdiction, the

Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

        The potential basis for the Court's jurisdiction over Plaintiff's state law claims is

supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  "Supplemental jurisdiction allows federal

courts to hear and decide state-law claims along with federal-law claims when they are so related

to claims in the action within such original jurisdiction that they form part of the same case or

controversy." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998).

Where a district court has original jurisdiction over federal claims and supplemental jurisdiction over state claims, the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Where courts dismiss federal claims at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Here, the Court has determined that it will dismiss all of Plaintiff's claims for which it has original jurisdiction, *i.e.*, Plaintiff's federal claims. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.   **CONCLUSION**

For the reasons set forth above, the Court will dismiss with prejudice Plaintiff's Section 1983 claims against the NJDOC and state officials acting in their official capacity. The Court will also dismiss without prejudice Plaintiff's Section 1983, ADA, and RA claims against the remaining defendants without prejudice for failure to state a claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff may file an amended complaint within thirty days if he believes he can allege facts curing the above deficiencies and entitling him to relief. An appropriate Order follows.

Date: July 31, 2023

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**